UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-103-FDW

| ERIC L. GREEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| ERIC DYE, et al., | ) | **ORDER** |
| Defendants | | |

THIS MATTER comes before the Court on a Motion for Summary Judgment by Defendants Elizabeth Powell, Janice Welch, Jeffrey Clawson, William Minton, Kenneth Poteat, and Reginald Hamilton.[1] (Doc. No. 56). Also pending is Plaintiff's own summary judgment motion, (Doc. No. 50).

## I. BACKGROUND

### A. Procedural Background

On June 15, 2017, while incarcerated in the custody of the North Carolina Department of Public Safety, and pursuant to 42 U.S.C. § 1983, Plaintiff Eric Green filed this action against Nurse Practitioner, Marilyn Gamewell, and the

---

[1] Defendant Reginald Hamilton has passed away since the filing of this action. See (Doc. No. 55).

1

moving Defendants.[2] (Doc. No. 1). Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical need in violation of the Eighth Amendment while he was incarcerated at Alexander Correctional Institution.

On September 29, 2017, the Court issued a frivolity order allowing Plaintiff's claims to proceed, except as to Eric Dye. On February 26, 2018, Gamewell, filed a motion to dismiss for failure to state a claim. (Doc. No. 27). On August 30, 2018, the Court granted Gamewell's motion to dismiss because Plaintiff failed to state a claim for deliberate indifference as to her and failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. (Doc. No. 43 at 6-7).

On November 19, 2018, Defendants filed the pending summary judgment motion. (Doc. No. 56). On December 27, 2018, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 59). Plaintiff filed a Response brief to the summary judgment motion on January 11, 2019. (Doc. No. 60).

**B.** **<u>Factual Background</u>**

---

[2] Plaintiff has since been released from prison and now resides in Virginia.

1. **Plaintiff's Allegations and Summary Judgment Materials**

Plaintiff alleges that starting in March 2016, he began having his teeth removed as part of multiple dental procedures. (Doc. No. 1 at ¶¶ 17-19). Plaintiff alleges that on January 28, 2017, he submitted a sick-call request, complaining of constant pain while eating, headaches, and gum discomfort. (Id. at ¶ 21). Plaintiff alleges further that he submitted a second sick-call request on February 7, 2017, again complaining of gum pain. (Id. at ¶ 22). Plaintiff alleges that on February 28, 2017, he wrote a letter to Defendant Poteat informing him that his food was too hard to eat. (Id. at ¶ 28). Additionally, Plaintiff alleges that Defendant Powell was also aware of this issue. (Id.).

Plaintiff alleges that on March 11, 2017, Nurse Practitioner Marilyn Gamewell ordered Plaintiff on a "diet mechanical soft ground meats only." (Id. at ¶ 31). Plaintiff alleges that on April 13, 2017, Defendants Clawson, Powell, and Poteat knew that Plaintiff had received a meal tray that he did not believe was "right," and none of them corrected the issue. (Id. at ¶ 37). Plaintiff further alleges that Defendants Minton and Hamilton, who worked in the kitchen, refused to provide him with the "right" meals. (Id. at ¶¶ 39-40). Plaintiff also alleges that on April 13, 2017, Defendant Welch was made aware that Plaintiff had not received the "right" meal tray, and she failed to correct the issue. (Id. at ¶ 41).

Plaintiff alleges that he was denied a proper diet with the right amount of

protein. (Id. at ¶ 47). Plaintiff further alleges that Defendants were all deliberately indifferent and negligent to his serious medical need because they failed to provide him with the "right" meals. (Id. at ¶¶ 56 58, 60, 62-63). In his prayer for relief, Plaintiff seeks a declaration that Defendants were deliberately indifferent in violation of his Eighth Amendment rights, in failing to provide him a diet that would allow him to consume a proper amount of protein. (Id. at 20-22). Plaintiff also seeks compensatory and punitive damages and injunctive relief. (Id. at 25-30).

On November 19, 2018, Plaintiff filed a motion for summary judgment, with supporting materials. (Doc. No. 50). This filing includes a one-page declaration from Plaintiff in support of his motion, which relates solely to his dental issues and not receiving more or different pain relief medication. (Id. at 2). The filing further repeats and then attempts to refute specific paragraphs contained in an earlier filing by Gamewell. (Id. at 4-7). In addition, Plaintiff filed another supporting document that only references one Defendant. (Doc. No. 50-2 at ¶¶ 15-18). Moreover, these paragraphs in Doc. No. 50-2, which relate to Defendant Welch, do not contain any new factual allegations. The remainder of the numbered paragraphs in Doc. No. 50-2 relate to individuals other than Defendants.

### 2. Defendants' Summary Judgment Materials

Defendants' summary judgment materials include the affidavits of Pamela

Chapman, Kenneth Poteat, Thomas Hummel, and Jeffery Clawson, with attached exhibits. Defendants' evidence shows the following events and circumstances:

Plaintiff submitted a sick call request seeking medical assistance because he could not eat his food after all of his teeth were pulled. (Doc. No. 58-1 at ¶ 7: Chapman Aff.). On February 11, 2017, a sick call encounter was performed at the clinic, and a dietitian consult was requested. (Id. at ¶ 8). Also on February 11, 2017, a dietitian performed a nutritional assessment on Plaintiff and recommended a Mechanical Soft diet for twelve months. (Id. at ¶ 9). On February 20, 2017, Nurse Practitioner Marilyn Gamewell placed a Utilization Review (UR) request on Plaintiff's behalf, requesting that he be placed on a Mechanical Soft diet. (Id. at ¶ 10). The UR request was approved on February 22, 2017. (Id.). On March 6, 2017, following the UR approval, the modified diet was accepted in Plaintiff's electronic health record. (Id. at ¶ 11). When a modified diet request is accepted in an inmate's electronic health record, this information is automatically transferred to the Offender Population Unified System (OPUS), the record management system used throughout the North Carolina Department of Public Safety (hereinafter "the Department"). (Id. at ¶ 12).

The Mechanical Soft diet is a variation of the regular diet that substitutes fresh fruits and vegetables (which are hard) with canned fruits and vegetables (which are soft). (Doc. No. 58-3 at ¶ 16: Hummel Aff.; Doc. No. 58-7 at 1: Ex. A

to Poteat Aff.). At Alexander, the standard-diet meal trays provided in restrictive housing do not include hard fruits or vegetables. (Id. at ¶ 17). Instead, all inmates in restrictive housing are provided canned fruits and vegetables, whether on a Mechanical Soft meal tray, or a standard meal tray. (Id.). Therefore, the meal trays that Plaintiff received while in restrictive housing at Alexander Correctional Institution would most likely have complied with a Mechanical Soft diet simply by virtue of his being in a restrictive housing unit. (Id. at ¶ 18).

Additionally, all meat served at Alexander comes from a facility operated by the Department. (Doc. No. 58-3 at ¶ 19). The meat from this facility is all processed meat, meaning the meat is mechanically ground and pressed into patties. (Id.). These patties are easily cut into pieces or mashed further with the plastic eating utensils provided with the meal trays. (Id.). The meat served in a Mechanical Soft meal tray is the same as the meat served on a standard meal tray. (Id.). Therefore, the meat provided in all meal trays, including the Mechanical Soft meal trays, is soft meat. (Id.). Accordingly, the meal trays that Plaintiff would have received, at all times relevant to this lawsuit, would have contained soft-processed meats, as well as canned fruits and/or vegetables. (Id. at ¶ 21). Therefore, Plaintiff's meal trays would have complied with the Mechanical Soft diet. (Id.).

Food Services Management receives Satellite Feeding Menus from the

Department's lead dietitian detailing what foods are to be prepared for each meal on a given day. (Id. at ¶ 9). Each morning, a food services manager will print a copy of the Satellite Feeding Report from the Food Management System (FMS). (Id. at ¶ 10). This report provides a list of inmates housed in a satellite unit, such as restrictive housing, along with a corresponding list of that inmate's assigned diet. (Id.). The FMS populates the Satellite Feeding Report based on information in the OPUS. (Id.). The diet information in OPUS is populated by the information that is input and approved in an inmate's electronic health record. (Id.).

A food services manager uses the Satellite Feeding Menu, along with the daily Satellite Feeding Report, to create a chart to be used by kitchen staff to prepare the meals. (Id. at ¶ 11). The meal trays are then loaded onto specific carts for distribution. (Id.). Each meal cart is loaded with meal trays designated for a particular unit. (Id. at ¶ 13). A food services manager provides a copy of the Satellite Feeding Report to correctional custody staff, detailing which inmate is to receive which meal tray. (Id.).

On occasion, correctional custody staff will call down to food services to notify them that an inmate is claiming to have received the incorrect meal tray. (Id.). When this happens, the on-duty food services manager will refer to the Satellite Feeding Report and the chart created for that day to verify that the inmate has received the correct meal tray. (Id.). More often than not, the inmate has

received the correct meal tray. (Id.). Typically, according to a current food services manager, when an inmate claims to have received the wrong tray, they simply misunderstand what their prescribed diet calls for, or they expect that the meal should be different in some way. (Id.). On the rare occasion that an inmate is provided the incorrect meal tray, a food services manager will instruct kitchen staff to quickly prepare the correct tray and provide it to correctional custody staff for distribution to the inmate. (Id. at ¶ 14).

If an inmate reports receiving a meal tray that he believes to be incorrect, correctional custody staff at Alexander are trained to contact food services and/or their supervisor to verify the inmate has received the correct meal tray. (Doc. No. 58-4 at ¶ 12: Poteat Aff.). If correctional staff confirms with the kitchen that the tray is incorrect, they are instructed and trained to work with the kitchen staff to ensure that the inmate is provided the correct meal tray. (Id.). Unit Manager Poteat states in his affidavit that he is aware of two instances in which Plaintiff reported issues with his meal trays through the administrative grievance process. (Id. at ¶¶ 14, 16). One instance occurred in March 2017, in which Plaintiff claimed that he was given hard food for an entire week. (Id. at ¶ 14). Prison administrators investigated this claim and determined that Plaintiff's diet was changed to Mechanical Soft in early March 2017, and that the meal trays being provided to Plaintiff complied with the Mechanical Soft diet. (Id. at ¶ 15). The second

instance involved Plaintiff's claim that correctional custody staff refused to contact food services after Plaintiff complained that he received the wrong meal tray. (Id. at ¶ 16). The prison investigated the claim and determined that staff told Plaintiff that they could contact food services about his complaint or he could eat from the meal tray he was provided, and that Plaintiff chose to eat from the meal tray. (Id. at ¶ 17).

Defendant Clawson states in his affidavit that, as a correctional officer, he has no control over what is provided in a meal tray, nor which meal trays he is provided for distribution. (Doc. No. 58-8 at ¶ 10: Clawson Aff.). At each meal, correctional officers like Defendant Clawson are given dozens of meal trays to distribute to inmates housed in satellite locations, such as restrictive housing units. (Id. at ¶ 9). If an inmate informs Defendant Clawson that he received a meal tray he believes is incorrect, Defendant Clawson will call food services to verify that the correct meal tray was provided to the inmate. (Id. at ¶ 11).

Defendant Clawson only specifically recalls one such incident involving Plaintiff. (Id. at ¶ 8). On April 13, 2017, Plaintiff advised Defendant Clawson that he believed the meal tray he received was not correct. (Id. at ¶ 6). Defendant Clawson then called food services to verify whether the correct meal tray had been provided to Plaintiff. (Id. at ¶ 7). Food services informed Defendant Clawson that he had given the correct meal tray to Plaintiff. (Id.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311

(4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual" punishment and applies to the states through the Fourteenth Amendment. U.S. Const. amend. VIII; e.g., Estelle v. Gamble, 429 U.S. 97, 101 (1976). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "The Supreme Court has prescribed a two-part inquiry to determine whether prison officials' conduct

11

violated their duty under the Eighth Amendment to provide humane conditions of confinement." Williams v. Branker, 462 F. App'x 348, 353 (4th Cir. 2012). "The first part of the inquiry asks whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities." Id. (citing Farmer, 511 U.S. at 834). To be "sufficiently serious," the deprivation must be "extreme" in that it poses "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from […] exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

"The second part of inquiry asks whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement." Id. To satisfy the "subjective" prong, a plaintiff must show that the defendant acted with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal quotation and citations omitted). In conditions of confinement cases, the requisite state of mind is deliberate indifference. Id. In the Fourth Circuit, Farmer has been interpreted to require proof of two factors to successfully show deliberate indifference against a prison official: (1) that the prison official subjectively recognized a substantial risk of harm; and (2) that the official recognized that their

actions were inappropriate in light of that risk.  Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004); Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "The subjective component [of the deliberate indifference standard] therefore sets a particularly high bar to recovery."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).  Thus, to constitute deliberate indifference "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier, 896 F.2d 848, 851 (4th Cir. 1990).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

### A. Plaintiff's Claim Against Defendants in their Official Capacities

First, to the extent that Plaintiff has sued Defendants in their official capacities, a suit against a state official in his official capacity is construed as against the state itself.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983.  Id.; see Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978).

Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts.  See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996).  Although Congress may abrogate the states' sovereign immunity, it has

not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina which had not been waived). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

**B.  Plaintiff's Claims Against the Moving Defendants in their Individual Capacities**

Plaintiff's theory of liability against Defendant turns on his allegations that on multiple occasions he did not receive the "right" meal tray. (Doc. No. 1 at ¶¶ 31, 37, 39-41, 47, 56-58, 60, 62-63). The record evidence, however, as noted above, shows that correctional staff and food services work diligently to provide inmates with the correct meal trays, and when a concern is raised, the matter is looked into. Moreover, Defendants' evidence demonstrates that, more often than not, the Mechanical Soft trays are exactly the same as the standard meal trays. Finally, Defendants' evidence shows that Plaintiff submitted grievances related to being brought the wrong meal on only two occasions. Accordingly, the record evidence refutes Plaintiff's claims that he was provided the wrong meal tray on

multiple occasions.

Even assuming that Plaintiff could show that he was not provided the right meal tray on numerous occasions, he presents no evidence, nor does he allege any facts, upon which a reasonable juror could infer that he was subjected to a serious or significant risk of injury or harm. That is, Plaintiff has not produced evidence, nor has he alleged any specific facts, indicating that his health deteriorated as a result of Defendants' alleged conduct. The closest Plaintiff comes to touching on nutrition or health in his Complaint are his allegations that he could not get enough food. (Doc. No. 1 at ¶ 47). Moreover, in response to summary judgment motion, he alleges that he lost weight, and he noticed that his gums were bleeding. However, he fails to allege how much weight was lost, and he wholly fails to tie his alleged bleeding gums to the diet he was given. Thus, he fails to raise a genuine dispute of fact as to the objective part of his deliberate indifference claim. Accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (allegation by prisoner that he received only two meals a day on weekends and holidays, with no suggestion of any deleterious physical or mental effects, did not state a cruel and unusual punishment claim); Witschi v. N.C. Dep't of Pub. Safety, No. 1:14-cv-68-FDW, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014) (unpublished) (stating that to prevail on an Eighth Amendment claim under a theory of not being provided proper food, a Plaintiff "would have to show that he was not provided

with adequate nourishment to sustain his health"); King v. Lewis, No. 1:09CV165-03-MU, 2010 WL 2231782, at *2 (W.D.N.C. June 1, 2010) (unpublished case) (complaints of occasionally hunger pains and worries about not having enough food fall "far short of any deleterious effect or actual weight loss"); Robinson v. Walser, No. 5:07-CT-3039-D, 2009 WL 6669324, at *4 (E.D.N.C. Jan. 21, 2009) (unpublished) (granting defendant's summary judgment motion where the inmate did not show that he "has become ill, lost weight, or suffered any physical injury from the alleged lack of food"). Therefore, the evidence, even in the light most favorable to Plaintiff, is insufficient to support the objective prong of a deliberate indifference claim and Defendants are entitled to summary judgment. In sum, Plaintiff cannot support the objective prong of a deliberate indifference claim and Defendants are entitled to summary judgment as a result.

Plaintiff also presents no evidence, nor does he allege facts, upon which a reasonable juror could infer that any Defendant actually recognized a substantial risk of harm and that their actions, in light of that recognition, were so inappropriate as to "shock the conscience." Miltier, 896 F.2d at 851. To the contrary, the record evidence demonstrates that Defendants work to ensure that correct meal trays are provided to inmates, and when they are not, they make attempts to remedy the problem. The record evidence does not support an inference that Defendants actually knew of and disregarded a serious risk of harm

to Plaintiff's health or safety. Therefore, Plaintiff cannot satisfy the subjective prong of his deliberate indifference claim and Defendants are entitled to summary judgment for this reasons as well.

In sum, for the reasons stated herein, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.[3] Plaintiff also alleges that Defendants actions were both deliberately indifferent and negligent. This Court declines to exercise supplemental jurisdiction over these remaining state law claims. 28 U.S.C. § 1367(c)(3).

### C. Effect of Summary Judgment Ruling against the Remaining Defendants Named in this Action

The Court notes that the remaining individuals who were named as Defendants in this action were never served. See (Doc. No. 15) (noting summons returned as unexecuted as to Defendants Bell, Steerts, Wilcox, and Wood). However, the Court's findings as to Plaintiff's deliberate indifference claim related to his food service applies to these Defendants as well. See Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 360 n.2 (7th Cir. 1987) (stating that the district court

---

[3] Defendants also raised qualified immunity as a defense to Plaintiff's claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.

17

may sua sponte enter summary judgment in favor of nonmoving, additional defendants "if the motion raised by the first defendant is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion").

Finally, the Court notes that, in addition to naming Defendants who were involved in food service at the prison, Plaintiff also named several "John Doe" Defendants, described as medical providers, who are alleged to have failed to provide Plaintiff with proper dental care while at Alexander. However, Plaintiff never identified or served any of these Defendants. See FED. R. CIV. P. 4(m). To the extent that Plaintiff intended to bring a separate deliberate indifference claim against these John Doe Defendants related to his dental care, that claim and these Defendants are dismissed. Coward v. Town & Village of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) ("Where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant.") (internal quotation marks omitted); see also Keesh v. Artuz, No. 97cv8417, 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants. Accordingly, the complaint against them must be dismissed."); Blake v. Race, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (dismissing claims

against "John Doe" defendants because plaintiff had "an opportunity to pursue discovery to identify the unknown defendants but failed to do so").

## IV. CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants may be held liable for deliberate indifference to Plaintiff's serious medical needs, and Defendants are therefore entitled to summary judgment as to Plaintiff's Eighth Amendment claim. This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3).

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 56), is **GRANTED** as to Plaintiff's Eighth Amendment claim, and that claim is dismissed with prejudice. To this extent, Plaintiff's own summary judgment motion, (Doc. No. 50), is **DENIED**. As to Plaintiff's state law claims, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. 28 U.S.C. § 1367(c)(3).
2. The Clerk is respectfully instructed to terminate this action.

Signed: March 25, 2019

_____
Frank D. Whitney
Chief United States District Judge